IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDWIN PERRINE,                          )
                                        )
    Plaintiff,                          )
                                        )
        vs.                             )   Civil Action No. 10-952
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
    Defendant.                          )

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Edwin Perrine and Defendant Michael J. Astrue, Commissioner of Social Security. Plaintiff seeks review of a final decision by the Commissioner denying his claim for disabled adult child benefits under Title II of the Social Security Act, specifically 42 U.S.C. § 401(d)(1). For the reasons discussed below, Defendant's motion is granted and Plaintiff's motion is denied.

**II.  BACKGROUND**

   A.   Factual Background

Plaintiff Edwin Perrine was born on June 23, 1956. (Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 3, "Tr.," at 55.) He received a general education diploma in 1979. (Tr. 65.) According to an

undated disability report, he underwent surgery on his back, neck and feet to repair congenital birth defects at some unspecified time. As a result, he experienced chronic pain which made walking and standing difficult. (Tr. 59-60.)

B. Procedural Background

On March 3, 2009 Plaintiff applied for child's insurance benefits based on his father's earnings record, claiming he had been disabled from birth. (Tr. 24-25.) His application was denied on May 27, 2009, the examiner having concluded that there was no medical evidence in the file which showed a disabling impairment prior to the date on which Mr. Perrine turned 22, that is, June 23, 1978. Moreover, the conditions he alleged in his application did not impose any significant restrictions. (Tr. 9; 17-20.) Mr. Perrine sought a hearing before an Administrative Law Judge ("ALJ") which was to be held by the Honorable David G. Hatfield. (Tr. 6.) Acting *pro se*, Plaintiff waived his right to appear at the hearing.[1] (Tr. 22-23.) On July 14, 2009, Judge Hatfield issued his decision, again denying benefits inasmuch as he found Plaintiff had failed to provide any medical evidence to support his allegation that he was disabled prior to age 22. (Tr. 10-16.) The Social Security Appeals Council

---

1  On or about June 11, 2009, Mr. Perrine wrote regarding "an appearance before a judge" that the evidence he had already provided "is more than sufficient. . . . Please just go through the procedure and [administer] to me my new benefit package. I have been through enough. I will not be put through anymore." (Tr. 22-23.)

2

declined to review the ALJ's decision on May 14, 2010, finding no reason pursuant to its rules to do so. (Tr. 1-5.) Therefore, the July 14, 2009 opinion became the final decision of the Commissioner for purposes of review. 42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), *citing* Sims v. Apfel, 530 U.S. 103, 107 (2000). On July 19, 2010, now represented by counsel, Plaintiff filed suit in this Court, seeking judicial review of Judge Hatfield's decision.

C. Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

### III. STANDARD OF REVIEW

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported

by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), *citing* Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, CA No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), *citing* Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

## IV. LEGAL ANALYSIS

### A. The ALJ's Determination

In addition to the better known Social Security program in which a claimant receives benefits based on his own earnings record and disability, the Social Security Administration has a program under which a disabled adult child can receive benefits based on his parent's work record. See 20 C.F.R. § 404.350. "To receive child's benefits based on his deceased father's earning record, [the claimant needs] to demonstrate, *inter alia*, that he had a disability before attaining age 22 and that this disability continued without interruption through the date of his application." Beasich v. Comm'r of Soc. Sec., No. 02-3627, 2003 U.S. App. LEXIS 11378, *2 (3d Cir. June 6, 2003), *citing* 42 U.S.C. § 402(d) and 20 C.F.R. § 404.350. To satisfy the disability prong of this test, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe he is unable to pursue substantial gainful employment[2] currently existing in the national economy. The impairment must be one which is expected to result in death or to have lasted or be expected to last not less than twelve months. 42 U.S.C.

---

[2] According to 20 C.F.R. § 404.1572, substantial employment is defined as "work activity that involves doing significant physical or mental activities." "Gainful work activity" is the kind of work activity usually done for pay or profit.

5

§ 1382c(a)(3)(C)(i); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000).

To determine a claimant's rights to disability benefits,[3] the ALJ conducts a formal five-step evaluation:

(1) if the claimant is working or doing substantial gainful activity, he cannot be considered disabled;

(2) if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits his ability to do basic work activity, he is not disabled;

(3) if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;

(4) if the claimant retains sufficient residual functional capacity ("RFC")[4] to perform his past relevant work, he is not disabled; and

(5) if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional or national economy, he is not disabled.

20 C.F.R. § 404.1520(a)(4).

In steps one, two, and four, the burden is on the claimant to

---

[3] Although most generally applied when the claimant is seeking disability insurance or supplemental security income benefits for himself, the same rules apply when seeking benefits for a disabled adult child. See Beasich, 2003 U.S. App. LEXIS 11378, at *19-*22.

[4] Briefly stated, residual functional capacity is the most a claimant can do despite his recognized limitations. Social Security Ruling 96-9p defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."

6

present evidence to support his position that he is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work which is available in the national economy.[5]  Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

As a preliminary step, Judge Hatfield first noted that Plaintiff alleged he has been disabled from birth, thus satisfying the requirement that the onset date of his disability occurred before he attained the age of 22, i.e., June 23, 1978. (Tr. 15.) At step one, he found that Plaintiff had not engaged in substantial gainful activity since birth. (Id.)[6]

At step two, Judge Hatfield noted that the Pennsylvania Bureau of Disability Benefits ("the Bureau") had requested records from the relevant time period from the medical providers identified by Mr. Perrine, but there seemed to be no such records. He further noted that the Social Security Administration had sustained its burden of ensuring the record was fully developed, but that the burden of showing disability prior to age 22 is on the claimant. In this case,

---

[5] Step three involves a conclusive presumption based on the listings, therefore, neither party bears the burden of proof at that stage. Sykes, 228 F.3d at 263, n.2, citing Bowen v. Yuckert, 482 U.S. 137, 146-147 n.5 (1987).

[6] Although the ALJ does not elaborate on this conclusion, the record shows that Mr. Perrine had minimal earnings between 1972 and 1980 and again in 1989. (Tr. 27-28.) He also advised one of his physicians that he had been a radioman with the U.S. Marine Corps for two years and received an honorable discharge. (Tr. 81.) It appears Mr. Perrine began receiving Social Security disability payments in March 1985. (Tr. 47.)

there were no medical signs or objective medical evidence to support Mr. Perrine's allegations of congenital birth defects that precluded him from performing any type of substantial gainful activity. The ALJ therefore terminated his analysis at step two, finding Mr. Perrine had not been under a disability at any time prior to age 22. (Tr. 16.)

B. Plaintiff's Arguments

In his brief in support of the motion for summary judgment, Plaintiff argues that "the record indicated that claimant had birth defects, including a bone sofital birth defect and a Chiari malformation." (Doc. No. 5, "Plf.'s Brief," at 3.) Plaintiff further argues that he has submitted "relevant evidence that was improperly not considered by the ALJ and is not included in the August 18, 2010 transcript," specifically letters from Drs. Richard E. Davis and Sabrina Varga. The failure to consider this evidence was an error of law and, inasmuch as there is no evidence on the record to contradict the opinions of Plaintiff's treating physicians on the question of his disability, he should be awarded benefits. (Plf.'s Brief at 4-5.) Alternatively, Plaintiff argues that the case should be remanded so medical sources who provided treatment before he reached age 22 can be asked to check their older records. (Plf.'s Brief at 6-7.)

In the undated disability report noted above, Mr. Perrine

indicated that Dr. Martha J. Moore had been his primary care physician for 15 years prior to 2008; Dr. Anthony J. Rossi had provided surgery "20 years ago" and treated him through January 2009 (Tr. 62); he had received treatment for his back at Meadville Medical Center between 1974 and April 2009; and he had been treated for his birth defects by a number of doctors at UPMC Horizon Hospital System in Greenville, Pennsylvania, between 1956 and 2008 (Tr. 63.)

On April 28, 2009, the Bureau requested records for the period 1977 through 1984[7] from numerous providers, including John P. Scullin, III, at Greenville Orthopedic Associates. (Tr. 78.) Dr. Scullin's records cover the period June 2001 through September 2005, but a handwritten note indicates that those are the only records for Mr. Perrine and that the office has "nothing from 1977-1984." (Tr. 79.) Dr. Scullin's recent records (Tr. 80-101) shed no light on whether Plaintiff's current medical problems (neck pain secondary to cervical arthritis, back pain, migraine headaches, pituitary microadenoma, hypertension, environmental allegories, nasal surgeries, testicular hydrocele removal, and surgery for his left knee injured in a fall) were related to birth defects. Although there is a single reference to surgery to repair hammertoes (Tr. 84), the record does not indicate if this condition occurred prior to age

---

7   As noted above, Plaintiff began receiving Social Security benefits in March 1985. It appears, therefore, the Bureau sought records for the period one year before his twenty-second birthday until his alleged disability onset date, i.e., April 28, 1984. (Tr. 47.)

9

22; when the surgery took place; or if this impairment led to his eventually being declared disabled.

Also on April 28, 2009, the Bureau requested records from Meadville Medical Center (which had no records), P. Kumar (who responded "no patient by that name"), UPMC Horizon Hospital (no records), Sharon Regional Health [Center] (no records), and J. Wassil (telephone number disconnected.) (Tr. 102; 105.) Although there is no indication that the Bureau attempted to contact Dr. Moore or Dr. Rossi directly, Plaintiff's disability form notes that they provided treatment only after 1993 in the case of Dr. Moore and after 1989 in the case of Dr. Rossi, well after the last date on which Plaintiff would have qualified for child benefits, i.e., 1978.

Mr. Perrine relies on a letter from Dr. Richard E. Davis, a chiropractor, dated July 1 and received by the Bureau on July 6, 2009. (Plf.'s Brief at 5 and Exhibit B, *see also* Tr. 113.) Dr. Davis indicated that Mr. Perrine had received care through his office "for a number of years due to reoccurring episodes of severe back pain, both lower back, upper back and neck." There was marked disc space narrowing at L3-L4 and significant degenerative disc disease at C3-C7. Dr. Davis also noted a Chiari malformation[8] at the

---

[8] A Chiari malformation is a structural defect in which part of the cerebellum (the portion of the brain that controls balance) is located below the opening between the brain and the spinal canal, rather than above the opening as in a normal brain. The resulting pressure on the cerebellum and brain stem may affect functions controlled by these areas and block

craniocervical junction." There is no indication in the letter that any of these problems could be attributed to a congenital impairment, had begun before Plaintiff was age 22, or was in any way disabling. We agree with Mr. Perrine that the ALJ failed to mention this letter in his decision of July 14, 2009, if, in fact, he had received it prior to that date. However, because it sheds no light on Plaintiff's medical condition prior to age 22, we conclude that even if the ALJ had taken it into consideration, his conclusions regarding Plaintiff's application for benefits would not have changed. *See* Rutherford, 399 F.3d at 553 (refusing to remand where stricter compliance with a Social Security ruling would not have changed the outcome.)

Dr. Varga's letter dated October 30, 2009, which Plaintiff provides as Exhibit A to his brief states in its entirety:

> Mr. Perrine's x-ray shows a bone sofital birth defect. Patient has had daily chronic pain. He has been deemed

---

the flow of cerebrospinal fluid that surrounds and cushions the brain and spinal cord. The malformation may be caused during fetal development because of genetic mutations or improper maternal diet or can be caused later in life if spinal fluid is lost due to injury, exposure to harmful substances, or infection. Many people with a Chiari malformation do not have symptoms and may not know they have the condition until it is discovered through treatment for another condition when the person undergoes diagnostic tests such as neurological tests, x-rays of the head and neck which reveals bone abnormalities often associated with the condition, CT scans, or MRIs. Some malformations are asymptomatic and do not interfere with a person's normal activities; in other cases, pain medications or surgery to relieve pressure on the cerebellum or spinal cord or to halt the progression of damage to the central nervous system may be required. *See* National Institute of Neurological Disorders and Stroke, Chiari Malformation Fact Sheet, at www.ninds.nih.gov/disorders/chiari/detail, last visited December 13, 2010.

> unemployable secondary to this pain. If you need any more
> information, please do not hesitate to contact me.

(Plf.'s Brief, Exhibit A.)

Dr. Varga does not explain her relationship to Mr. Perrine, when she treated him, what effect the "bone sofital birth defect"[9] had on his physical abilities, who deemed him "unemployable" or when. Plaintiff admits he did not provide this letter to the Social Security Administration until on or about November 4, 2009, almost four months after the ALJ issued his decision. Again, had the ALJ received this letter prior to his decision, there is nothing therein which would tend to show that Plaintiff was disabled prior to age 22.

Even if the letter from Dr. Varga had contained overwhelmingly persuasive evidence to support Plaintiff's contention that he was disabled from birth, this Court would be precluded from taking it into account. *See* Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001) ("evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence.") Nor is this Court authorized to review the Appeals Council's decision to deny review. Moreover, we can remand the matter to the Commissioner for further consideration only if the claimant has shown that the evidence is new and material and that there was good cause why it was not presented to the ALJ in a timely fashion. Matthews,

---

[9] Despite rigorous searches, the Court has been unable to identify any medical condition referred to as a "sofital" or "bone sofital birth defect."

12

id. In his brief, Mr. Perrine has failed to address any of those criteria for remand.

Plaintiff simply argues that the ALJ erred by failing to consider the opinions of Drs. Varga and Davis. Because there is no evidence on the record to contradict their opinions, they "must be considered credible and controlling in the evaluation of his claim." (Plf.'s Brief at 5.) However, Plaintiff considerably embellishes the content of the two letters when he argues that Drs. Varga and Davis have opined "that plaintiff suffers from birth defects since his birth." (Plf.'s Brief at 5.) Dr. Davis does not mention or allude to any type of birth defect or the onset date of any impairment in his letter. While Dr. Varga refers to a sofital birth defect, there is no explanation of the effect this condition might have on Plaintiff's ability to perform substantial gainful activity. Thus, these letters, even if the ALJ had considered them, would not have established that Plaintiff was disabled prior to age 22.

Mr. Perrine argues in the alternative that his claim should be remanded because he was unable to obtain medical evidence due to the length of time that elapsed since he reached age 22. Although Meadville Medical Center, UPMC Horizon Hospital Health System and Sharon Regional Health System all responded that they held no records from the period 1977 to 1984, Plaintiff submits that he should be given the opportunity to determine if these missing records can

somehow be retrieved. (Plf.'s Brief at 5-6, *citing* Melkonyan v. Sullivan, 501 U.S. 89 (1991), and Shank v. Barnhart, CA No. 02-306, 2002 U.S. Dist. LEXIS 15028 (E.D. Pa. Aug. 2002); *see also* Plaintiff's Exhibits C, D, and E.) We are not persuaded by Plaintiff's reliance on these cases inasmuch as we find their facts significantly different from those presented here.

In Melkonyan, the Social Security Administration denied the claimant's first application for benefits and he appealed that decision to the district court in California. Shortly before filing the appeal, Melkonyan submitted a second benefits application with new evidence of disability. That application was approved within three months and he sought summary judgment reversing the decision on his first application, arguing that the new evidence supported his earlier claim. The Commissioner of Social Security moved to remand the case to the Appeals Council so the first application could be reconsidered in light of the additional evidence; the district court granted the motion and the Appeals Council vacated the prior decision. Melkonyan, 501 U.S. at 91-92.

Nothing in the Melkonyan opinion supports Plaintiff's argument that he should be given another opportunity to try to find the missing records; in fact, the opinion deals almost entirely with the question of whether the order remanding the case to the Appeals Council was a "final judgment" in Melkonyan's favor which entitled his attorney

14

to fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). Melkonyan does not stand for the proposition that a decision should be remanded when there is no new evidence, only the possibility that records which have been identified by the medical providers as unavailable may somehow be found if the plaintiff is given a second chance to request them.

Shank is also easily distinguishable. There, the plaintiff twice applied for benefits, both applications were denied, and she appealed to the district court. The Commissioner filed a motion to remand, requesting that the matter be returned to the Appeals Council because Shank's administrative file had been lost. The defendant further represented to the court that if the file could not be found within a reasonable time, it would be reconstructed. Shank, 2002 U.S. Dist. LEXIS 15028 at *1-*2. Unlike this case, the issue was not whether additional medical records could be found if the plaintiff were given a second chance to try to retrieve them from the providers. That is, there was no indication the records themselves did not exist, only that the copies provided to the Administration had been lost. Melkonyan and Shank are further distinguishable in that the Commissioner asked for the remand in both those cases, a factor which is not applicable here.

Keeping in mind that at step two of the prescribed analysis, the burden is on the claimant to come forward with medical evidence

15

to support his contention that his impairments or combination of impairments precludes any substantial gainful activity, we recognize that Social Security disability proceedings are non-adversarial in nature and that the ALJ has the responsibility to develop "a full and fair record." Herring v. Barnhart, CA No. 03-6464, 2005 U.S. Dist. LEXIS 4838, *17 (E.D. Pa. Mar. 25, 2005); see also Boone v. Barnhart, 353 F.3d 203, 208, n. 11 (3d Cir. 2003), quoting Ventura v. Shalala, 55 F.3d 900, 903 (3d Cir. 1995). It is also the duty of the ALJ to help a claimant develop the record, particularly when he or she is acting pro se. Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003), quoting Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985 ("When a claimant appears at a hearing without counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'") And where the medical evidence is incomplete or ambiguous or the record reveals evidentiary gaps resulting in prejudice to the claimant, the ALJ has the additional duty of identifying medical experts for further consultation. Livermore v. Barnhart, No. 03-1769, 2004 U.S. App. LEXIS 244, *7 (3d Cir. Jan. 9, 2004).

Here, however, Mr. Perrine waived his right to appear at a hearing and testify (Tr. 22-23), directing instead that his case be decided on the evidence already provided and foregoing the opportunity to explain his medical history in person to the ALJ or

16

to seek further assistance. We also conclude that the ALJ did not err by failing to seek a consultative examination since such a procedure in 2009 would not have assisted him in determining Plaintiff's medical condition between 1956 and 1978, more than 30 years before. The Social Security Administration, as the ALJ noted in his decision, had contacted, or attempted to contact, the medical providers Plaintiff identified and while it is unfortunate that they did not have records going back that far, it is not unexpected.

The ALJ's decision issued on July 14, 2009, is affirmed. Summary judgment is granted in favor of Defendant. An appropriate order follows.

December _14_, 2010      _William L. Standish_
                                                William L. Standish
                                              United States District Judge